### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 22-77** |
| **VERSUS** | * | |
| | * | **SECTION L (4)** |
| **HENNESSY DEVON COOPER ZELAYA** | * | |
| **RUDY JACKSON HERNANDEZ** | * | |

### ORDER AND REASONS

Before the Court are several motions in limine filed by the Government. R. Docs. 338, 341, 342, 346, 347, and 348. Defendants Hennessy Devon Cooper Zelaya and Rudy Jackson Hernandez (collectively, the "Defendants") oppose four of the motions. R. Docs. 355, 356, 357, and 363. Having considered the briefing and applicable law, the Court now rules as follows.

I.    **LAW AND ANALYSIS**

   A.    **Government's Motion in Limine to Preclude Defendants from Cross-Examining Witnesses on Certain Topics – R. Doc. 338**

The Government moves to prevent the Defendants from using information related to former United States Coast Guard (USCG) Maritime Enforcement Specialist Oscar Maltez and United States Customs and Border Protection (CBP) Officer Erin Lassus during cross-examination. The Government alleges that USCG's Non-Judicial Punishment (NJP) of Mr. Maltez in 2009 due to his failure to obtain clearance for international travel is too attenuated to be relevant and does not relate to Mr. Maltez's credibility. Similarly, the Government argues the fact that Ms. Lassus received a Letter of Counseling because she committed a CBP security violation when she forwarded a document marked "For Official Use Only" to her private email address in June 2023 does not relate to Ms. Lassus' credibility. The Defendants oppose the

1

motion. At this time, the Court will defer any ruling on this issue until the witnesses are in fact
called at trial and such a ruling becomes necessary.

B.    **Government's Motion in Limine to Admit the Video-Recorded Deposition of
Lenord Cooper with Redactions Pursuant to Government Objections – R.
Doc. 342**

The Government requests this Court for an order admitting the video-recorded deposition
of Lenord Cooper as well as the exhibits offered by the United States and the Defendants in the
course of the deposition. Additionally, the Government asks the Court to rule on specific
evidentiary objections lodged at the deposition, so that it may redact those portions of the video
and transcript before they are ultimately admitted into the record. In opposition, the Defendants
agree that portions of the deposition should be admitted at trial but argue that the Government's
objections to certain questions and answers should be overruled.

As an initial matter, the Court will admit the deposition of Lenord Cooper into the record.
The Cooper deposition satisfies all the requirements of Rule 804(b)(1) of the Federal Rules of
Evidence because (1) all parties had equal opportunity to develop Cooper's testimony at the
deposition and (2) Cooper is unavailable to testify at trial despite the Government's good-faith
efforts to obtain his presence. However, the Court must now turn to each of the Government's
objections to determine whether its proposed redactions of the deposition are warranted.

First, the Government requests this Court to sustain its objection to Ms. O'Neil's
questions and Cooper's answers about his meetings with a cooperating witness. The Government
alleges that Cooper was likely confused as to what was actually being asked of him and that his
answers could touch upon his knowledge about narcotics being transported on the M/V Pop
vessel during its February 2022 voyage. Given the Court ruled that Cooper could raise the Fifth
Amendment to any questions involving narcotics, the Government contends that it was not able
to cross-examine Cooper about his presence at or knowledge about the January 2022 meeting

during which the Defendants allegedly discussed concealing cocaine on the M/V Pop. The Government thus argues that it did not have an opportunity and similar motive to develop that testimony as required by Rule 804(b)(1)(B). The Defendants take the position that the Government had ample opportunity to ask general questions which could have resolved any purported misunderstanding Cooper might have had. Here, the Court finds the redaction of this line of questioning from Cooper's deposition is improper and thus overrules the Government's objection. There is no indication that these questions and answers would mislead or confuse the jury, and the Government could have asked clarifying questions at the deposition without infringing upon the subject for which the Court sustained Mr. Cooper's claim of Fifth Amendment privilege.

Second, the Government requests the Court to sustain its objection as to Mr. Washington's questions and Cooper's answers about the typical pay Cooper received as a crew member on a boat in Honduras on the grounds that the answer is irrelevant and not admissible under Federal Rule of Evidence 104. The Government argues the question at issue is whether the Defendants were paid anything by anyone and/or expected to receive anything of value in exchange for attempting to bring migrants to the United States illegally on board the M/V Pop, not actual payment or an agreement to pay. The Defendants oppose the objection, noting that the typical pay a similarly situated crew member who works in the same industry receives is highly relevant and admissible. Here, the Court agrees with the Defendants and overrules the Government's objection. Whether or not the Defendants were paid at a typical crew member rate could have some bearing on the purpose of their employment and the extent of their involvement in the alleged conspiracy. Given the low bar for a showing of relevancy, the Court orders that this line of questioning not be redacted from the deposition.

Third, the Government requests the Court to find any statements made by the court

reporter, videographer, and the attorney's objections to be inadmissible and thus redacted from the deposition transcript. The Defendants do not oppose this request, but argue that the notice of deposition, Cooper's factual basis, and the exhibits to the Government's Rule 15 motion should not be admitted at trial. The Court will sustain the Government's objection as to the extraneous statements recorded during the Cooper deposition. As to the deposition exhibits, the Court will declare these admissible; however, the Court will defer any ruling on the admissibility of the notice of deposition, Cooper's factual basis, and the Government's exhibits supporting their Rule 15 motion.

Accordingly, the motion is **GRANTED in part** and **DENIED in part**. The portions of the Lenord Cooper deposition agreed upon by the parties shall be deemed admissible. Additionally, all disputed portions of the Cooper deposition and the exhibits introduced at the deposition, except for the notice of deposition, Cooper's factual basis, and the Government's exhibits supporting its Rule 15 motion, shall be deemed admissible.

**C.    Government's Motion in Limine Requesting Court Order Finding Business Records Are Authenticated and Admissible Pursuant to Rules 803(6), 902(11), and 902(13) – R. Doc. 346.**

The Government moves for a court order finding the records from PNC Bank N.A., Delta Airlines, American Airlines, United Airlines, CoCo Four, and Garmin International Inc. have been authenticated and are admissible as business records under Rules 803(6) and 902(11). Given the parties' revised stipulations, R. Doc. 365, the Government's motion is **DENIED** as **MOOT**.

**D.    Government's Motion in Limine Requesting Court Order Finding that Cellular Data Extractions Be Authenticated Pursuant to Federal Rules of Evidence 902(11), 902(13), and 902(14) – R. Doc. 347**

The Government requests the Court to enter an order finding that the extraction reports and data of certain cellular cell phones owned by Rudy Jackson Hernandez, Hennessy Devon

Cooper Zelaya, Carl Allison, Josue Alexander Flores-Villeda, and "Co-Conspirator 1" be authenticated pursuant to Federal Rules of Evidence 902(11), 902(13), and 902(14) without any further requirement that the United States call the forensic agents to testify. The Government notes that it wishes only to authenticate the documents, not necessarily admit them at this time. Given the parties' revised stipulations, R. Doc. 365, the Government's motion is **DENIED** as **MOOT**.

> **E.     Government's Motion in Limine for Determination that Records Are Admissible Pursuant to Federal Rules of Evidence 807, 901(a), and 901(b)(4) – R. Doc. 348**

The Government moves to admit into evidence bank records from the Honduran bank, Banco Atlántida, that were seized from Defendant Rudy Jackson Hernandez's cellular phone pursuant to Federal Rules of Evidence 807, 901(a), and 901(b)(4). As to the authenticity of the evidence, the Government contends that the Banco Atlántida online funds transfer records are readily apparent by their appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances. The Government further argues that the bank records are admissible under Rule 807's residual hearsay exception because they constitute business records and thus provide the equivalent circumstantial guarantees to an existing Rule 803 exception. In opposition, the Defendants argue that the Government has failed to obtain actual authenticated Honduran bank records in compliance with 18 U.S.C. § 3505, which they allege provides the means for authenticating foreign records of regularly conducted activity in a criminal case. The Defendants further argue that the Government fails to demonstrate the exceptional circumstances needed to warrant application of the residual hearsay exception.

Contrary to the Defendants' position, the Government is not required to rely solely on § 3505 in order to authenticate foreign business records. *See United States v. Khatallah*, 41 F.4th

608, 622 (D.C.C. 2022) (finding that foreign records deemed admissible pursuant to § 3505 were also properly authenticated consistent with Federal Rule of Evidence 901). However, the Government must still establish that the Banco Atlántico bank records are self-authenticating through their "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Here, the Court finds that the authenticity of Government Exhibit 47.7 has been established because the records clearly show that they were generated by Banco Atlántida, and the web browser is the same as the login page for Banco Atlántida's secure online banking portfolio for business accounts. As to Government Exhibit 47.4, the Court will defer any ruling on the authenticity of this purported bank record. It is not clear whether this bank record was generated by Banco Atlántida, and it is far too blurry for the Court to glean what its actual contents purport to be on its face.

Furthermore, the Government must prove that the Banco Atlántico records contained in Government Exhibit 47.4 and 47.7 are admissible evidence. "Rule 807's residual hearsay exception allows the admission of hearsay statements that are not covered by another exception if the statements have 'equivalent circumstantial guarantees of trustworthiness' and the district court determines that they are material, probative, and in the interests of justice." *United States v. El Mezain*, 664 F.3d 467, 497 (5th Cir. 2011) (citing Fed. R. Evid. 807; *United States v. Ismoila*, 100 F.3d 380, 393 (5th Cir. 1996)). Rule 807 also provides a notice requirement, requiring the proponent to provide "reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice." Fed. R. Evid. 807. Here, the Court again defers any ruling on the admissibility of Exhibit 47.4 due to the issue raised above as to

this bank record's authenticity. However, the residual hearsay exception applies to the Government's proffered foreign bank records in Exhibit 47.7 for three reasons. First, for the same reasons that the Banco Atlántida records satisfy the authenticity requirements of Rule 901(a) and (b)(4), they likewise constitute business records, as defined in Rule 803(6)(A)–(C), and therefore provide the "equivalent circumstantial guarantees of trustworthiness" to an existing Rule 803 exception required by Rule 807. *See United States v. Wilson*, 249 F.3d 366, 375-76 (5th Cir. 2001) (holding foreign bank records meet the trustworthiness requirement under Rule 807 because "the banks and their customers rely on their accuracy in the course of business"). Second, these foreign bank records are highly probative because they detail payments that the Defendants received for their alleged involvement in the charged illicit conduct contained in the second superseding indictment. Third, the Government provided adequate notice of its intent to admit these foreign bank records by including them in their proposed exhibit lists in June, September, and October of 2024. Accordingly, the Government's motion is **GRANTED in part** and **DENIED in part**. The Court defers ruling on Government Exhibit 47.4 but will declare Exhibit 47.7 authenticated and admissible.

III.    **CONCLUSION**

Based on the foregoing;

**IT IS HEREBY ORDERED** that the Court will defer ruling on the Government's Motion in Limine, R. Doc. 338, at this time.

**IT IS FURTHER ORDERED** that the Government's Motion in Limine, R. Doc. 342, is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that the Government's Motions in Limine, R. Docs. 346 and 347, are **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that the Government's Motion in Limine, R. Doc. 348, is

**GRANTED in part** and **DENIED in part.**

New Orleans, Louisiana, this 8th day of November, 2024.

_____

United States District Judge