UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL ACTION** |
| | * | |
| | * | **NO. 22-77** |
| **VERSUS** | * | |
| | * | **SECTION L (4)** |
| **HENNESSY DEVON COOPER ZELAYA** | * | |
| **RUDY JACKSON HERNANDEZ** | * | |

**ORDER AND REASONS**

Before the Court is a Renewed Motion for Judgment of Acquittal, or in the Alternative, a New Trial filed by Defendants Hennessy Devon Cooper Zelaya and Rudy Jackson Hernandez. R. Doc. 421. The Government opposes the motion. R. Doc. 429. The Defendants replied. R. Doc. 437. Oral argument on the motion was held on Thursday, February 13, 2025 at 2:00 p.m. R. Doc. 426. Considering the record, briefing, and applicable law, the Court now rules as follows.

I.     BACKGROUND

This case arises out of an international criminal operation to smuggle undocumented aliens and cocaine into the United States. R. Doc. 230. In February 2022, Defendants Rudy Jackson Hernandez and Hennessy Devon Cooper Zelaya were serving as crew members on a ship called the M/V Pop when it departed from Utila, Honduras bound for Cocodrie, Louisiana. *Id.* at 2. After a week at sea, the M/V Pop ran out of fuel and was adrift in the Gulf of Mexico approximately 91 miles off the coast of Grand Isle, Louisiana. *Id.* On February 14, 2022, U.S. Coast Guard agents rescued the M/V Pop and discovered the Defendants, another crewman Lenord Cooper, Captain Darrell Martinez, and twenty-four undocumented Honduran nationals on board. *Id.* The Coast Guard agents apprehended all of the M/V Pop's occupants and seized the vessel. *Id.* at 3. Later, law enforcement conducted a search of the M/V Pop and found approximately 24 kilograms of a

1

substance containing a detectable amount of cocaine hidden below deck. *Id.*

The Government indicted eight individuals including the Defendants, Darrell Martinez, and Lenord Cooper as well as the owner of the M/V Pop, Carl Allison, for their roles in the human and drug smuggling conspiracy. *Id.* Four of the co-conspirators pleaded guilty to various charges. The Defendants pleaded not guilty as to all counts. R. Docs. 257, 258. Accordingly, a jury trial was scheduled for the Defendants, which took place during the week of November 12, 2024. R. Doc. 374. The Defendants were subsequently convicted of one count of conspiracy to bring aliens to the United States for commercial advantage or private financial gain (Count 1) and two counts of attempt/aiding and abetting the attempt to bring an alien to the United States for commercial advantage or private financial gain (Counts 4 and 5). R. Doc. 380. The Government dismissed Count 3 less than a week before trial. R. Doc. 366. The Defendants were acquitted of Count 2. *Id.* The jury was not able to reach a unanimous verdict on Count 6, the drug conspiracy charge, which the Government has now dismissed without prejudice. R. Doc. 422.

## II. PRESENT MOTION

Defendants seek a Judgment of Acquittal under Fed. R. Crim. P. 29 or in the alternative, a new trial under Fed. R. Crim. P. 33. R. Doc. 419-1. R. Doc. 421. First, the Defendants argue that there was insufficient evidence to allow a jury to conclude beyond a reasonable doubt that they–or any other co-conspirator–intended to obtain a commercial advantage or private financial gain, mandating acquittal on all counts of conviction. *Id.* at 11-16. Specifically, they claim that the Government's own witnesses testified there was no profit motive in transporting or attempting to transport the Honduran nationals to the United States, and that they were merely engaged in philanthropic efforts to help immigrants come to America to realize their dreams. *Id.* Second, the Defendants argue that the Government presented insufficient evidence of the Defendants' knowing and willful agreement to smuggle Honduran nationals for profit. *Id.* at 16-19. Lastly, the Defendants

contend in the alternative that a new trial is warranted because of the Government's reliance on co-conspirator testimony that was allegedly full of equivocations and inconsistencies. *Id.* at 19-24.

The Government opposes the motion. R. Doc. 429. It argues that it presented evidence sufficient to support the Defendants' conviction by a rational jury. *Id.* As to the financial purpose element, the Government argues that it set forth evidence that Defendants were paid a daily wage for crewing the smuggling expeditions as well as testimony that immigrants and their families paid for their passage. *Id.* at 4-12. Moreover, the Government argues that Martinez and Allison's testimony describing how the Defendants were recruited as crewmen for the human smuggling trips and their participation in preparing for the journeys is sufficient to show that they knowingly and willfully entered into the conspiracy. *Id.* at 12-16. Finally, the Government states that the Defendants have not sustained their burden of demonstrating a new trial is warranted in the interest of justice, noting motions for new trial are not favored and granted with extreme caution. *Id.* at 16-17.

The Defendants replied re-urging their position. R. Doc. 437.

### III. APPLICABLE LAW

#### A. Rule 29 Motion for Judgment of Acquittal

A Rule 29 motion seeking a judgment of acquittal challenges the sufficiency of the evidence to convict. Fed. R. Crim. P. 29(a). "[D]ue process requires the government to present evidence sufficient to prove each element of a criminal offense beyond a reasonable doubt[.]" *United States v. Delgado*, 672 F.3d 320, 331 (5th Cir. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). Where the government fails to present evidence sufficient to allow the jury to find every element of the offense beyond a reasonable doubt or fails to do more than pile inference upon inference, a conviction cannot be sustained. *United States v. Vargas*, 6 F.4th 616, 622 (5th Cir. 2021) (citations omitted); *see also United States v. Ventura*, No. 24-40100, 2025 WL 26063, at *4

(5th Cir. Jan. 3, 2025) (*per curiam*) (citation omitted).

Courts "assess a sufficiency challenge by asking whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vargas*, 6 F.4th at 622 (quoting *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (*en banc*)). This calls for an evaluation of "whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime." *United States v. Garcia*, 883 F.3d 570, 573 (5th Cir. 2018) (quoting *Vargas-Ocampo*, 747 F.3d at 301). Moreover, in assessing rationality, the court considers all evidence—including countervailing evidence—and all reasonable inferences drawn therefrom in the light most favorable to the prosecution. The court scrutinizes the evidence to ensure that a conviction is not based on "'mere suspicion, speculation, or conjecture, or an overly attenuated piling of inference upon inference.'" *United States v. Gonzalez*, 907 F.3d 869, 873 (5th Cir. 2018) (quoting *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011)).

However, "[t]he standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). The fact finder is "free to choose among reasonable constructions of the evidence," and "it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* (quotations and citations omitted). A defendant bears a heavy burden in meeting this high standard. *United States v. Achobe*, 560 F.3d 259, 263 (5th Cir. 2008). Consequently, reviewing courts are "highly deferential to jury verdicts." *United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010). That deference is underscored by the Fifth Circuit's frequent refrain: "We stress that 'all reasonable inferences and credibility choices must be made in favor of the jury verdict.'" *United States v. Deville*, 278 F.3d

4

500, 505 (5th Cir. 2002) (internal citation omitted); *see also United States v. Carter*, 953 F.2d 1449, 1456 (5th Cir. 1992) (noting that the court must give "the government the benefit of all reasonable inferences and credibility choices"). Thus, a court cannot grant a motion for judgment of acquittal unless it concludes, after viewing the evidence through the lens of this deferential standard, that a rational jury would necessarily have had to entertain a reasonable doubt as to the defendant's guilt. *See United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979).

    B.  Rule 33 Motion for New Trial

Rule 33 allows the court to grant a motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Unlike reviewing a motion for judgment of acquittal, when the district court reviews a Rule 33 motion for a new trial, it may assess the credibility of witnesses and weigh the evidence. *United States v. Herrera*, 559 F.3d 296, 302 (5th Cir. 2009). The court "must carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial, but must not entirely usurp the jury's function or simply set aside a jury's verdict because it runs counter to [the] result the district court believed was more appropriate." *Id.* (citation omitted). "Setting aside a jury's guilty verdict in the interests of justice may be appropriate under circumstances where the evidence brought forth at trial may tangentially support a guilty verdict, but in actuality, 'preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred.'" *Id.* (citation omitted). A court acts within its discretion in conditionally granting a new trial where, in sitting in essence as a thirteenth juror, "[a]lthough the evidence is sufficient to support a conviction, the [c]ourt has cautiously reweighed it and found it preponderated heavily against the guilty verdict." *Id.* at 302-03.

Though this Court can exercise some discretion, "motions for new trial are not favored, and are granted only with great caution." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (citing *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977)). "The movant bears the

burden of demonstrating that a new trial is justified." *United States v. Diaz*, No. CR 21-179, 2023 WL 5631043, at *2 (E.D. La. Aug. 31, 2023) (citing *United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997)). Furthermore, it is established principle that in assessing challenges to the sufficiency of the evidence, "the jury is the ultimate arbiter of the credibility of witnesses," and the testimony of an accomplice or someone making a plea bargain with the government can support a conviction. *United States v. Chapman*, 851 F.3d 363, 378 (5th Cir. 2017) (citing *United States v. Shoemaker*, 746 F.3d 614, 623 (5th Cir. 2014)).

## IV.   ANALYSIS

The Defendants' motion raises three issues that this Court must address. The Court takes each in turn.

### A. The Government Elicited Sufficient Evidence for a Reasonable Jury to Find the Defendants Acted for the Purpose of Commercial Advantage or Private Financial Gain.

All counts upon which the Defendants were convicted require the Government to prove beyond a reasonable doubt that they conspired and/or attempted to commit human smuggling acts for the specific unlawful purpose of commercial advantage or private financial gain. *See* Fifth Circuit Pattern Jury Instruction § 2.01A, 2.15A; *cf. United States v. Martinez*, 900 F.3d 721, 728 (5th Cir. 2018). In *United States v. Garcia*, the Fifth Circuit adopted "a benefit-centric definition" of this element. 883 F.3d 570, 574 (5th Cir. 2018). It explained that "the defendant must seek to profit or otherwise secure some economic benefit from h[is] smuggling endeavor[,]" and that "the [g]overnment [must] prove an anticipated gain beyond that of a pure reimbursement." *Id.* Notably, the statute does not require evidence of an actual payment or even an agreement to pay in order to satisfy the financial-purpose element. *Id.* at 575 (quoting *United States v. Kim*, 435 F.3d 182, 185 (2d. Cir. 2006).

Here, the Defendants argue that there is insufficient evidence to prove that they, nor any other co-conspirators, acted with a financial purpose in conspiring to bring Honduran nationals to the United States. The Court disagrees. First, several of the Government's witnesses established that most of the Honduran nationals paid the co-conspirators for passage to the United States. Carl Allison testified that: (1) Allison travelled to Utila to buy a boat and hire a captain to bring people from Honduras illegally to the United States "for a fee" (Trial Tr. at 444); (2) co-conspirator Alex Flores found 12 Honduran nationals who each paid $6,000 to travel to the United States in May of 2021 (Trial Tr. at 461); (3) Honduran nationals paid the smuggling fee by depositing money into Honduran bank accounts controlled by Allison (Trial Tr. at 549-550); (4) Allison thereafter raised the smuggling fee to $20,000 (Trial Tr. at 552-53); (5) Allison texted Alex Flores suggesting he tell potential passengers: "20K or no boat" (Trial Tr. at 555); and (6) Allison profited over a hundred thousand dollars from fees paid by Honduran nationals to be smuggled into the United States (Trial Tr. at 557). Additionally, the Government called the mother of one of the Honduran nationals on board the February 2022 voyage who testified that she paid the co-conspirators a portion of the $20,000 fee and promised to provide the remaining balance upon her son's arrival in the United States. Trial Tr. 724-26. Second, the Government also presented evidence that the Defendants in particular profited. Darrell Martinez testified that: (1) both Defendants made prior trips with him to bring Honduran nationals to the United States (Trial Tr. at 827, 833); (2) the Defendants were paid a monthly wage and an additional $200 a day when they were at sea (Trial Tr. at 877); and (3) money to pay the Defendants was wired from the United States to an account controlled by a co-conspirator who would then pay them in cash or deposit money into Defendants' accounts (Trial Tr. at 881). Further, Lenord Cooper, another crew member, admitted that he and the Defendants were paid around "$150 to $200 per day" during trips bringing migrants illegally to the United States. Trial Tr. at 759-60.

To the extent the Defendants argue that Carl Allison and Darrell Martinez's alleged philanthropic motivations override any intent they had to profit from the conspiracy, the Court finds this argument unavailing because the two motives are not mutually exclusive. Allison and Martinez might have thought they were benefitting the immigrants by bringing them to the United States, but that does not change the fact that most of the Honduran nationals were charged around $20,000 each for the trip. Moreover, the Defendants' reliance on *United States v. Garcia* for the proposition that Carl Allison had no profit motive and only sought to be reimbursed does not help their position. In that case, the defendant challenged the sufficiency of the evidence as to the financial purpose element, arguing that she only sought to be paid as pure reimbursement for her incurred smuggling costs rather than an economic benefit. *Garcia*, 883 F.3d at 575-76. The court upheld the defendant's conviction because the circumstantial evidence showed a "prospective intent" to profit given: (1) she was not related to the immigrants; (2) the smuggling operation was premeditated and the level of coordination and planning was more consistent with that of a professional, financed operation; and (3) there was a financer who was ready and willing to facilitate the operation's success.

Applied here, *Garcia* makes clear that the appropriate inquiry is not whether Allison or any of the Defendants actually recouped their financial losses but rather whether the circumstantial evidence supports the existence of a financial motive. There is more than enough evidence to support such an inference. As in *Garcia*, there is: (1) no indication that any of the co-conspirators personally knew every Honduran national that they smuggled to the United States, (2) the evidence clearly shows these smuggling runs were meticulously planned and the conspiracy involved several levels of management, and (3) the conspiracy was funded by Carl Allison to facilitate the operation's success. Accordingly, the Court will deny the Rule 29 motion on this ground.

### B. The Government Elicited Sufficient Evidence for a Reasonable Jury to Find Defendants Knowingly and Willfully Joined in the Human Smuggling Conspiracy.

Count 1 of the Second Superseding Indictment requires the Government to prove beyond a reasonable doubt that the Defendants "knowingly and willfully" agreed to smuggle Honduran nationals for profit. *See* Fifth Circuit Pattern Jury Instruction § 2.01A, 2.15A. It is well settled that the essence of the crime of conspiracy is the agreement. *United States v. Jones*, 642 F.2d 909, 914 (5th Cir. 1981). "Rarely, however, do conspirators join in 'open covenants openly arrived at.' Rather, the element of the agreement is generally established through circumstantial evidence that there was an understanding to which the defendant was party and which he intended to join." *Id.* (internal quotations and citations omitted). An agreement may be inferred from concert of action; voluntary participation and knowledge may be inferred from a collection or surrounding of circumstances. *United States v. Chon*, 713 F.3d 812, 818-19 (5th Cir. 2013). However, "[m]ere presence at the scene of a crime or close association with a co-conspirator will not support an inference of participation in a conspiracy[.]" *See United States v. Gonzalez*, 907 F.3d 869, 873 (5th Cir. 2018) (citation omitted). The government fails to prove the requisite conspiracy if the evidence merely invites suspicion or placed the defendants "in a climate of activity that reeks of something foul." *United States v. Sacerio*, 952 F.2d 860, 863 (5th Cir. 1992) (citation omitted).

Here, the Defendants argue that the evidence is insufficient to show they made an express or tacit agreement to join in the human smuggling conspiracy. The Court must again disagree. The Government established through Carl Allison and Darrell Martinez's testimony that Martinez recruited both Defendants to serve as crew members on the vessels used in the human smuggling runs (Trial Tr. at 818-20, 825-26, 828, 833-34), the Defendants had been on similar smuggling runs before February 2022 (Trial Tr. at 832-33), and they even joined Allison and Martinez in New York to buy the M/V Pop (Trial Tr. at 494). Martinez also testified that the Honduran nationals were "all

9

over the boat" each trip, and that the Defendants were responsible for tending to them, indicating they likely knew the passengers were illegally entering the United States. Trial Tr. at 825, 835-36. Moreover, Martinez testified that he informed the Defendants that their destination was Cocodrie, Louisiana because they were not going to bring the Honduran nationals to customs or immigration upon arrival due to the fact they "were [engaged] in illegal activity." Trial Tr. at 831-32. Lastly, Lenord Cooper, another crewman of similar rank and status as the Defendants, testified that they all three knew that the Honduran nationals were being smuggled, and they were compensated for it. Trial Tr. at 793. Considering the foregoing, the Court finds that the Government produced enough evidence at trial to support the jury's finding that the Defendants were knowing and willful participants in the human smuggling conspiracy and will not grant the Rule 29 motion on this basis.

### C. The Court Will Not Grant a New Trial.

The Defendants argue that the "interests of justice" warrant this Court to use its discretion and declare a new trial. They reraise their arguments made on the Rule 29 motion and highlight that a majority of the Government's evidence is based on cooperating witness testimony. However, the Fifth Circuit has held that the testimony of an accomplice or someone taking a plea bargain can support a conviction. *See Chapman*, 851 F.3d at 378. "The jury is the ultimate arbiter of the credibility of witnesses," not this Court. *Id.* Moreover, there is a lack of proof to support the Defendants' contention that Allison or Martinez were lying under oath or parroting what the Government allegedly told them to say. Even so, any fear of such misconduct affecting the trial is quelled by the fact defense counsel cross-examined both of these witnesses for several hours and never elicited any information showing any specific improper behavior from the Government in preparing these witnesses for trial. Accordingly, the Court will not grant the Defendants a new trial.

## V.     CONCLUSION

Based on the foregoing;

**IT IS HEREBY ORDERED** that the Defendants' Renewed Motion for Judgment of Acquittal, or in the Alternative, a New Trial, R. Doc. 421, is **DENIED**.

New Orleans, Louisiana, this 20th day of February, 2025.

_____
United States District Judge